PENDLETON, President,
delivered the resolution of the Court as follows;
In May, 1792, an execution, for the appellant against the estate of his father, was issued from the County Court of Hanover, returnable to August Court following, and was put into the hands of Clough the Deputy of Goodall the Sheriff, to be executed. He levied it on all the estate of the father which could be found, and sold it at auction,. when the appellant the creditor, became the purchaser of the whole, for 206/. 3s. 6o', for which he endorsed a receipt upon the execution, dated the 22d of May. In May, 1795, Bullock upon notice to Goodall, obtained a judgment against him in Hanover Court, for a fine of 264/. 8s. 9d. for Clough’s not having returned the execution. In June, Goodall obtained judgment against Clough for the amount of the fine and costs. But Goodall and Clough unite in a bill, exhibited to the High Court of Chancery, praying an injunction to, and relief against Bullock’s judgment on this ground, that the execution was retained, at the request of Bullock, until a settlement should take place between him and Clough.
The answer denies the request, not indeed in the terms of the charge, but probably comprehending a denial of them. Several depositions are taken, fully proving the confession of Bullock, and the general opinion that Bullock the father, had no estate, on' which a further execution could be levied. One witness, Thomson, swears, that in January or February, 1795, he applied to Bullock for his taxes, &c. and for Clough’s commissions for serving the execution: Bullock refused to settle with him, and desired him to request Clough to come and settle; and not to return the execution till the settlement. He delivered the message, and a settlement took place, when being asked if the execution must then be returned, Bullock said that it was immaterial, and that it might be done when convenient. A second witness, Moore, confirms the fact of the request not to return the execution until a settlement; hut as his deposition was taken after the decree, and the consent of parties does not appear, the Court doubt the propriety of considering it as evidence; and therefore, it *44 is not regarded. The answer then, stands contradicted by one positive witness only; but the Court consider that witness as supported by the strong circumstances, of Bullock’s rested from 1792, to 1795, without complaint of its not being returned; of having no inducement to require its return, nor the Sheriff any to retain it; since the money levied was paid, and no property for a new execution to act on; and, therefore, the answer is [not] to prevail within the rule of this Court.* The latitude in the sum of the fine, left to the discretion of the Court, is meant to meet the degrees of offence in the officer, and of injury to the creditor. That discretion is not to be exercised arbitrarily, but justly; so as to impose a fine commensurate to the offence and injury; and it was to check these discretionary powers, that our Bill of Rights has declared, that “excessive fines shall not be imposed.”† No man can doubt, but that a fine of 264l. 8s. 9d. imposed on an officer who has committed no fault, for the benefit of a creditor who has sustained no injury, is superlatively excessive, unconstitutional, oppressive, and against conscience. As little can it be doubted, that a Court of Equity may; and ought to give relief, even, if the appellant had pleaded to the jurisdiction, or demurred, as was done in the case of Pryor v. Adams, 1 Call, [382.] The decree affording this relief, is therefore unanimously affirmed.

[* Pryor v. Adams, 1 Call, 390; Wilkins v. Woodfin, 5 Munf. 183.]

[† And see Jones v. The Com 1 Call, 555.]